# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| SPANSION LLC, <br><br>         Plaintiff, <br><br>     v. <br><br> SAMSUNG ELECTRONICS CO., LTD; <br> SAMSUNG ELECTRONICS AMERICA, INC.; <br> SAMSUNG TELECOMMUNICATIONS <br> AMERICA, LLC; AND SAMSUNG AUSTIN <br> SEMICONDUCTOR, LLC. <br><br>         Defendants. | Civil Action No. 1:10cv881 (CMH/JFA) |

## SAMSUNG DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

Michael J. McKeon
Joseph V. Colaianni
Ahmed J. Davis
FISH & RICHARDSON P.C.
1425 K Street, NW, 11th Floor
Washington, DC 20005

Karolina Jesien
FISH & RICHARDSON P.C.
601 Lexington Avenue, 52nd Floor
New York, NY 10022

*Counsel for Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC, and Samsung Austin Semiconductor, LLC*

## <u>TABLE OF CONTENTS</u>

Introduction ............................................................................................................1

Statement of Facts ..................................................................................................3

   **I.**  The Plaintiff and Patents-In-Suit ...................................................................3

   **II.**  The Defendants and the Accused Products ...................................................4

      **A.**  Samsung Electronics Co., Ltd. (SEC) ...........................................4

      **B.**  Samsung Electronics America, Inc. (SEA) ....................................5

      **C.**  Samsung Telecommunications America, LLC (STA) ....................6

      **D.**  Samsung Austin Semiconductor, LLC (SAS) ...............................7

      **E.**  Samsung Semiconductor Inc. (SSI) ...............................................8

   **III.** The Spansion Lawsuits ..............................................................................9

Argument ..............................................................................................................10

   **I.**  The Standards For Transfer Are Clearly Satisfied ......................................13

      **A.**  Venue Would Be Proper In the Northern District of California ..............13

      **B.**  Plaintiff's Forum Choice Is Entitled To Virtually No Weight ...............14

      **C.**  Witness Convenience and Access to Evidence Strongly Favors Transfer .......................................................................................16

   **II.**  The Interest of Justice Does Not Weigh Against Transfer ..........................18

Conclusion ...........................................................................................................20

# TABLE OF AUTHORITIES

CASES

*Acterna, L.L.C. v. Adtech, Inc.*,
129 F.Supp. 2d 936 (E.D. Va. 2001) ............................................................ passim

*Agilent Technologies, Inc. v. Micromuse, Inc.*,
316 F.Supp.2d 322 (E.D. Va. 2004) .................................................14, 15, 17, 18

*BHP Int'l Inv. Inc. v. Online Exchange, Inc.*,
105 F. Supp. 2d 582 (E.D. Va. 2000) ...................................................................10

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
71 F.Supp.2d 517 (E.D. Va. 1999) .......................................................13, 15, 17

*In re Genentech*,
566 F.3d 1338 (Fed. Cir. 2009).....................................................9, 10, 11, 15

*In re Hoffman-LaRoche*,
587 F.3d 1333 (Fed. Cir. 2009)...........................................................................11

*In re Nintendo, Ltd.*,
589 F.3d 1194 (Fed. Cir. 2009).................................................................9, 11, 15

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008)...........................................................9, 10, 11, 12

*In re Volkswagen*,
545 F.3d 304 (5th Cir. 2008) (*en banc*) ..............................................................10

*In re Zimmer Holdings, Inc.*,
609 F.3d 1378 (Fed. Cir. 2010)......................................................................9, 12

*Koh v. Microtek Int'l, Inc.*,
250 F.Supp.2d 627 (E.D. Va. 2003) ....................................................................13

*Lycos, Inc. v. Tivo, Inc.*,
499 F.Supp.2d 685 (E.D. Va. 2007) ..............................................................13, 15

*Original Creatine Patent Co. v. Met-Rx USA, Inc.*,
387 F. Supp. 2d 564 (E.D. Va. 2005) .............................................................14, 18

STATUTES

28 U.S.C. § 1391(c) ..................................................................................................13

28 U.S.C. § 1400(b) ..................................................................................................12

28 U.S.C. § 1404(a) ............................................................................................................. passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45(c)(3)(A)(ii) .........................................................................................16

Defendants Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc.

("SEA"), Samsung Telecommunications America, LLC ("STA") and Samsung Austin

Semiconductor, LLC ("SAS") (collectively, "Samsung" or "the Samsung Defendants")

respectfully submit this memorandum of law supporting their motion to transfer venue pursuant

to 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of California.

## <u>INTRODUCTION</u>

Plaintiff Spansion LLC ("Spansion") is a Delaware limited liability company based in

Sunnyvale, California.  In a single week in August, it filed three patent infringement lawsuits

against the Samsung Defendants in three separate Federal district courts:

- *Spansion LLC v. Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; Samsung Telecommunications America, LLC; and Samsung Austin Semiconductor*, LLC, Civ. Act. 1:10cv881 (CMH/JFA) (E.D. Va.) ("**Virginia Action**") [D.I. 1];

- *Spansion LLC v. Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; Samsung Telecommunications America, LLC; and Samsung Austin Semiconductor*, LLC, Civ. Act. 3:10cv453 (W.D. Wis.) ("**Wisconsin Action**") [**Exhibit 1**]; and

- *Spansion LLC v. Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; Samsung Telecommunications America, LLC; and Samsung Austin Semiconductor*, LLC, Civ. Act. 5:10cv03446 (LHK) (N.D. Cal.) ("**California Action**") [**Exhibit 2**].[1]

Spansion also previously filed in 2008 a patent infringement lawsuit in the District of

Delaware, naming the Samsung Defendants as well as Samsung Semiconductor, Inc. ("SSI")—a

subsidiary of SEC that is incorporated and headquartered in California.[2]  While each of these

cases involve separate patents, they all involve the same accused products and processes—

---

[1] Spansion also filed that week a case in the United States International Trade Commission ("ITC") alleging that the Samsung Defendants and others infringed the same patents it asserted in the California Action.  *See In re Certain Flash Memory Chips and Products Containing Same*, Inv. No. 337-TA-735 (U.S.I.T.C.) ("**ITC Investigation**") [**Exhibit 3**] (without exhibits).

[2] That suit is styled as *Spansion LLC v. Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; Samsung Semiconductor, Inc.; Samsung Telecommunications America, LLC; and Samsung Austin Semiconductor*, LLC, Civ. Act. 1:08cv00855 (SLR) (D. Del.) ("**Delaware Action**") [**Exhibit 4**].

<u>**SAMSUNG'S MOTION TO TRANSFER VENUE**</u> – **PAGE 1**

Samsung flash memory products and their methods of manufacture.   The decision to file these many actions in different courts across the country—and intentionally to omit SSI from the Virginia Action and the Wisconsin Action while including it in the Delaware Action and the ITC Investigation—is pure gamesmanship.  This case simply does not belong here (as the Wisconsin case does not belong there).

The sole, transparent basis for Spansion to file suit in the Eastern District of Virginia is to seek the tactical advantage of speed through this Court's well-known "rocket docket" (which is also why it filed in Wisconsin).  None of the parties to this case is incorporated in or has its principal place of business in Virginia.  Spansion is a Delaware corporation with a principal place of business in California, and the Samsung Defendants are located in South Korea, Delaware, California, Texas and New Jersey, respectively.  None of the accused products or any of Spansion's competing products is manufactured in Virginia and none of the parties has operations in Virginia relevant to this action.  Neither the named inventors on the patents-in-suit nor any other percipient witnesses appear to reside in or be located in Virginia.  And no documentary or other relevant evidence appears to exist uniquely within Virginia.  In fact, the *only* relevance of this venue to the litigation *at all* is that Samsung has sold allegedly infringing products that have made their way into the Commonwealth—the so-called "stream of commerce" theory.  *See* Complaint, ¶ 9.

On the other hand, this case has significant connections with California.  The Northern District of California is where Spansion is headquartered and is where every single one of the 13 named inventors on the asserted patents resides.  The Northern District of California also is where SSI—a key Samsung subsidiary that imports and sells many of the accused flash memory products in the United States—is headquartered.  As a result, numerous material party witnesses

and evidence is located in the Northern District of California.  Additional material witnesses and evidence is located at SEC in South Korea, where the accused flash memory products are designed and developed.  For those witnesses and the parties collectively, the Northern District of California represents a much more convenient forum than does the Eastern District of Virginia.  Finally, Spansion most certainly understands that the Northern District of California is the most convenient forum because it also has filed a lawsuit there, which involves these exact parties and covers the very same accused flash memory products as the Virginia Action.

These factors suggest that this case should have been brought in the Northern District of California in the first place.  This Court should disregard Spansion's contrived basis to file its lawsuit here because this cause of action has no meaningful connection to Virginia.  Where, as here, the factors of venue consideration so overwhelming favor another jurisdiction, the case should be transferred for the convenience of the parties and witnesses and in the interest of justice pursuant to 28 U.S.C. § 1404(a).

## STATEMENT OF FACTS

### I.      THE PLAINTIFF AND PATENTS-IN-SUIT

Spansion purports to be the largest company in the world dedicated exclusively to designing, developing, manufacturing, marketing, and selling flash memory solutions.  *See* Complaint, ¶ 11.  None of its activity, however, takes place in Virginia.  Spansion is a Delaware corporation with its principal place of business in Sunnyvale, California.  *Id.*, ¶ 2.  The three patents asserted here in the Virginia Action—U.S. Patent Nos. 7,151,027 ("the '027 patent); 6,359,307 ("the '307 patent); and 6,232,630 ("the '630 patent)—name a total of 13 inventors, each of whom the patents identify as located in California.  *See id.*, Ex. A-C.  Of Spansion's six "design centers" where it performs various manufacturing and engineering functions, only two are in the United States—Sunnyvale, California and Austin, Texas.  *See* **Exhibit 5** [excerpt of

Spansion website, www.spansion.com, last visited at 9/24/2010] at 3.  The Sunnyvale

headquarters houses "one of [Spansion's] most critical groups in R&D," and the Austin location

is the "flagship manufacturing facility."  *See id.*  There is no evidence that Spansion has any

presence in or connection to Virginia at all.  Indeed, the sole authorized Spansion dealer that

services the Commonwealth—Strategic Sales, Inc.—is not even in Virginia, but Maryland.  *See*

*id.* at 7.

## II.     THE DEFENDANTS AND THE ACCUSED PRODUCTS

The Samsung Defendants also have no real ties to Virginia that suggest venue is more

appropriate here than in California.  Spansion knows it, and the allegations in the complaint

simply serve to demonstrate how attenuated this case's connection to Virginia really is.  *See, e.g.*,

Complaint at ¶ 9 ("[The Samsung Defendants] have placed infringing products into the stream of

commerce by shipping products into this district . . . . [and] are also increasing their contacts

with this district by, for example, advertising employment positions in [Virginia].").  These

statements are relevant to personal jurisdiction (which for purposes of this motion Samsung does

not dispute) but do not bear on the issue of venue at all.  As the declarations submitted herewith

make irrefutably clear, the convenience to Samsung, its witnesses, and its case, lies heavily in

another forum, the Northern District of California.

### A.     Samsung Electronics Co., Ltd. (SEC)

SEC is a corporation organized under the laws of South Korea with its principal place of

business in South Korea.  *See* Declaration of Bryan Richardson at ¶ 3.  SEC designs and

manufactures the accused flash memory products, as well as numerous finished products that

incorporate those flash memory products—including mobile telephone products; semiconductor

products; and televisions, monitor products, set-top boxes, and mobile computing products.  *Id*.

The design and development for these products occurs in South Korea. *Id.* at ¶ 4. Accordingly, SEC documents related to such information also are located in South Korea. *Id.*

Among the many individuals that are employed by SEC, permanently reside in South Korea and are likely to have relevant and material information:

- **Tae Kyung Kim**, Principal Engineer, NAND Flash Process Architecture Group. Mr. Kim is expected to have information relevant to at least the NAND Flash process and design for the accused flash devices and products incorporating the accused devices. Declaration of Bryan Richardson at ¶ 5.

- **Young Ho Lim**, Vice President, Flash Circuit Design Team. Mr. Lim is expected to have information relevant to at least memory and circuit design issues in the accused flash devices and products incorporating the accused devices. Declaration of Bryan Richardson at ¶ 5.

- **Jay Shim**, Vice President/General Manager & General Patent Counsel. Mr. Shim is expected to have relevant information regarding the disputes between Samsung and Spansion, the accused flash devices and products incorporating the accused devices. Declaration of Bryan Richardson at ¶ 5.

For each of the individuals identified above, it would be much more convenient to travel to the Northern District of California than Virginia.

## B.    Samsung Electronics America, Inc. (SEA)

SEA is a Delaware corporation with its principal place of business in Ridgefield Park, New Jersey. *See* Declaration of Nancy Abbott at ¶ 4. SEA is not involved in the design, development or manufacturing of any flash memory or flash component. *Id.* at ¶¶ 5-6. Instead, SEA purchases finished products containing Samsung flash memory products designed and manufactured by SEC, and acts as record importer for those products when they are imported into the United States. *Id.* at ¶ 5. These products include televisions, monitor products, set-top boxes, and mobile computing products sold and offered for sale in the United States. *Id.* The majority of SEA's local sales offices are located in California and New Jersey; none is located in Virginia. *Id.* at ¶¶ 7-9.

The individuals that are most likely to have relevant or material information are located either in California or New Jersey. These include:

- **Bret Berg**, Sales/Marketing Manager, Mobile Computing Products. Mr. Berg (Irvine, CA) is expected to have information relevant to Samsung notebooks and ultra mobile computers that incorporate the accused flash memory devices. Declaration of Nancy Abbott at ¶ 10.

- **Richard Campbell**, Director Digital Imaging. Mr. Campbell (New Jersey) is expected to have information relevant to Samsung cameras, camcorders and picture frames that incorporate the accused flash memory devices. Declaration of Nancy Abbott at ¶ 10.

- **William Hadam**, Director Digital Audio/Video. Mr. Hadam (New Jersey) is expected to have information relevant to Samsung MP3, BluRay, and DVD players that incorporate the accused flash memory devices. Declaration of Nancy Abbott at ¶ 10.

- **Daniel Schinasi**, Senior Manager, Product Planning. Mr. Schinasi (New Jersey) is expected to have information relevant to Samsung televisions that incorporate the accused flash memory devices. Declaration of Nancy Abbott at ¶ 10.

C.     **Samsung Telecommunications America, LLC (STA)**

STA is a Delaware corporation with its principal place of business in Richardson, Texas. *See* Declaration of Timothy Sheppard at ¶ 4. STA is not involved in the design, development or manufacturing of the accused flash memory devices. *Id*. at ¶ 7. Instead, STA is the distribution subsidiary for Samsung mobile handsets and certain other telecommunications products. *Id*. at ¶ 6. STA also sells and offers for sale these products in the United States. *Id*. All of the documents and evidence that STA believes may be material to this lawsuit are maintained at its headquarters in Richardson, Texas. *Id*. at ¶ 10.

The individuals having relevant or material information are located at STA headquarters in Texas. These include:

- **Bryan Berndt**, Vice President Business Operations (Wireless Terminal Sales). Mr. Berndt is expected to have information relevant to STA sales and distribution

of products incorporating the accused flash memory devices.  Declaration of Timothy Sheppard at ¶ 11.

- **Tim Rowden**, Vice President Production Management (Wireless Terminal Sales). Mr. Rowden is expected to have information relevant to STA sales and distribution of products incorporating the accused flash memory devices. Declaration of Timothy Sheppard at ¶ 11.

- **Jeff Krusinski**, Director Customer Care (Service and Operations). Mr. Krusinski is expected to have information relevant to the service and operation of STA products incorporating the accused flash memory devices.  Declaration of Timothy Sheppard at ¶ 11.

- **Paul Golden**, Sr. Director Marketing (Wireless Terminal Sales). Mr. Golden is expected to have information relevant to the marketing and sales of STA products incorporating the accused flash memory devices.  Declaration of Timothy Sheppard at ¶ 11.

- **Sudhi Herle**, Engineer VP WTL (VZW Wireless Labs).  Mr. Herle is expected to have information relevant to the operation of STA products incorporating the accused flash memory devices.  Declaration of Timothy Sheppard at ¶ 11.

- **Timothy Sheppard**, Controller.  Mr. Sheppard is expected to have information relevant to the sales and distribution of STA products incorporating the accused flash memory devices.  Declaration of Timothy Sheppard at ¶ 11.

### D.    Samsung Austin Semiconductor, LLC (SAS)

SAS is a Delaware corporation with its principal place of business in Austin, Texas.

Declaration of Catherine Q. Morse at ¶ 4.  SAS manufactures products incorporating the accused

flash memory devices; it is the only Samsung manufacturing location outside of South Korea.

*Id*. at ¶ 5.  SAS is not involved in the design or development of the accused flash devices or

products incorporating the accused flash devices.  *Id*. at ¶ 6.  SAS has one office in Austin,

Texas, and is registered to do business in Texas and Delaware.  *Id*. at ¶¶ 7-8.  It does not have

any offices or employees in the Eastern District of Virginia.  *Id*. at ¶ 9.

Individuals at Samsung Austin Semiconductor who are likely to have information

relevant or material to this lawsuit include:

- **Sungnam Chang**, Process Architect.  Mr. Chang is expected to have information relevant to the manufacturing of products that incorporate the accused flash memory devices.  Declaration of Catherine Q. Morse at ¶ 10.

- **WangChul Shin**, Product Technology.  Mr. Shin is expected to have information relevant to the manufacturing of products that incorporate the accused flash memory devices.  Declaration of Catherine Q. Morse at ¶ 10.

E.    **Samsung Semiconductor Inc. (SSI)**

SSI a California corporation headquartered in San Jose, California.  *See* Declaration of K.W. Kim at ¶ 4.  SSI is not involved in the design, development or manufacturing of the accused flash memory devices.  *Id*. at ¶ 5.  Instead, SSI purchases semiconductor products that containing Samsung flash memory products designed and manufactured by SEC, and acts as record importer for those products when they are imported into the United States.  *Id*.  SSI also sells and offers for sale these products in the United States.  *Id*.

Samsung Semiconductor is qualified to do business in the following states:  California, Florida, Georgia, Illinois, Massachusetts, North Carolina, New Jersey, New York, Oregon, Tennessee, Texas, and Washington.  *Id*. at ¶¶ 6-8.  It has no offices or employees in Virginia.  *Id*. at ¶ 9.

The key witnesses at SSI that have material information are located at SSI headquarters in California.  These include:

- **Steve Weinger**, Director of Memory Marketing.  Mr. Weinger is expected to have information relevant to the importation and sale of products containing the accused flash memory devices.  *See* Declaration of K.W. Kim at ¶ 11.

- **Jane Kim**, Senior Manager, Accounting & Tax. Ms. Kim is expected to have data regarding the sales of certain products containing the accused flash memory devices.  *See* Declaration of K.W. Kim at ¶ 11.

Documents or evidence within Samsung Semiconductor's possession, custody, or control that may be relevant or material to this lawsuit are located in San Jose, California.  *See* Declaration of K.W. Kim at ¶ 10.

## III.   THE SPANSION LAWSUITS

In November 2008, Spansion filed the Delaware Action against SEC, SEA, SSI, STA and SAS.  *See* Exhibit 4.  As noted above, a number of the parties to the lawsuit are incorporated in Delaware.  According to the allegations in that Complaint, Spansion generally averred that Samsung was infringing six Spansion patents related to flash memory.  That case is ongoing, and is set for trial in Fall 2011.

On August 6, 2010, Spansion filed the California Action against SEC, SEA, STA and SAS, asserting infringement of four patents; SSI, however, was not named.  *See* Exhibit 2.  The California Action specifically identifies Samsung's 35 nm, 42, nm, 51 nm, and 65 nm flash memory devices.  *See id.*, ¶ 15.  One the same day, Spansion filed the ITC Investigation asserting the same patents and accusing the same products.  The ITC Investigation (like the earlier Delaware Action) included infringement allegations against SSI.

Spansion filed this Virginia Action also on August 6.  The complaint names SEC, SEA, STA and SAS (but notably, not SSI, the California entity.  Like the California Action and the ITC Investigation, the Virginia Action accuses Samsung's flash memory devices manufactured in accordance with Samsung's purported 35 nm, 42 nm, 51 nm, and 65 nm processes.  Further, the three patents asserted in the Virginia Action name a total of 13 inventors and every one of them is located in the Northern District of California.[3]

---

[3] The inventors on the '027 patent are from Sunnyvale, CA; Campbell, CA; and Saratoga, CA.  [Complaint, Ex A].  The inventors on the '307 patent are from Sunnyvale, CA; Fremont, CA; San Jose, CA; and Saratoga, CA.  [*Id.*, Ex. B]  The inventors on the '630 patent are from Sunnyvale, CA; Fremont, CA; and Santa Clara, CA.  [*Id.*, Ex. C].

Spansion then filed the Wisconsin Action one week later, on August 13, 2010.  *See*

Exhibit 1.  Once again, the complaint names SEC, SEA, STA and SAS—but not SSI.  This

Complaint accuses Samsung's 35 nm and 42 nm flash memory devices of infringing United

States Patent No. 5,793,677.  The '677 patent names four inventors, every one of whom is

located within the Northern District of California.[4]

## ARGUMENT

"For the convenience of the parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a).  Because venue challenges do not present issues unique to patent law, they

are governed by the law of the regional circuit.  *See, e.g., In re Zimmer Holdings, Inc.*, 609 F.3d

1378 (Fed. Cir. 2010); *In re Nintendo, Ltd.*, 589 F.3d 1194 (Fed. Cir. 2009); *In re Genentech*,

566 F.3d 1338, 1345 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008).

Although this case is thus governed by Fourth Circuit law, the Federal Circuit's recent treatment

of venue issues in the Fifth Circuit provides substantial guidance to this Court how this motion

should be decided.[5]

In *TS Tech*, for example, plaintiff Lear had sued for infringement of a patent related to

vehicle headrest assemblies, asserting venue was proper in the Eastern District of Texas under a

"stream of commerce" theory.  *See* 551 F.3d 1315, 1318 (Fed. Cir. 2008).  TS Tech moved to

transfer venue to Ohio because there was no meaningful connection to Texas—the key evidence

---

[4] The inventors on the '677 patent are from Sunnyvale, CA; Saratoga, CA; Redwood City, CA; and San Jose, CA.

[5] The Fifth Circuit standard is similar to that applicable here, in that it weighs the plaintiff's choice of venue; the convenience of the parties and witnesses; and various factors that implicate the interests of justice.  *Compare In re Volkswagen*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) *with BHP Int'l Inv. Inc. v. Online Exchange, Inc.*, 105 F. Supp. 2d 582, 593 (E.D. Va. 2000); *see also Acterna, L.L.C. v. Adtech, Inc.*, 129 F.Supp. 2d 936, 937 (E.D. Va. 2001).

and witnesses were located in Ohio, Michigan and Canada, and no parties or evidence were located in Texas. *See id.* The district court denied the motion to transfer in light of (among other things) the deference due to plaintiff's choice of forum, but the Federal Circuit granted a mandamus petition and ordered the district court to transfer the case. *See id.* at 1318-20. In the Federal Circuit's view, mandamus was proper because the district court had given plaintiff's forum choice inordinate weight; had "completely disregarded" the impact on the key witnesses having to travel some 900 miles to attend trial; had dismissed the location of the physical evidence; and had improperly assessed the public interest factors. *Id.* at 1320-21.

The Federal Circuit reached a similar conclusion five months later in *In re Genentech*, granting a mandamus petition and ordering a case transferred from Texas to the Northern District of California. *See* 566 F.3d 1338, 1345 (Fed. Cir. 2009). In that case, Sanofi (a German entity) filed suit against Genentech (headquartered in California) in Texas, asserting that the venue was convenient because it was "centrally located" between the parties headquarters and the expected sources of evidence. *See id.* at 1341. The district court denied defendant's transfer motion, finding among other things that there were multiple witnesses outside of the transferee forum (and thus not subject to process), and that the movant had failed to identify "key witnesses" in the transferee forum. *See id.* at 1342. The Federal Circuit granted a mandamus petition and ordered the transfer, rejecting both the heightened "key witness" standard the district court applied and the "central location" theory because no relevant evidence or witnesses whatsoever were in Texas. *See id.* at 1344. ("[I]t is undisputed that no identified witness is a resident of Texas . . . . Thus, the district court improperly used its central location as a consideration in the absence of witnesses within plaintiff's choice of venue.").

Like the *TS Tech* and *Genentech* defendants*,* Nintendo prevailed in its case on a

mandamus petition to the Federal Circuit after having a Texas district court deny its transfer

motion.  *See In re Nintendo*, 589 F.3d 1194 (Fed. Cir. 2009).  A Japanese corporation, Nintendo

was sued for patent infringement in Texas by an Ohio corporation with its headquarters in

Dublin.  It moved to transfer the case to Washington state on § 1404(a) convenience grounds

because: (a) no witnesses were in Texas; (b) four of its witnesses lived in Washington; and (c)

the accused products had been designed, developed and manufactured in Japan, which made

Washington state a much more convenient travel destination than Texas.  *See id.*, 589 F.3d at

1197, 1199.  The district court gave minimal weight to these factors and denied the transfer

motion, but the Federal Circuit held that was an abuse of discretion and ordered the transfer

motion be granted:

> This Court has held and holds again that in a case featuring most witnesses and
> evidence closer to the transferee venue with few or no convenience factors
> favoring the venue chosen by the plaintiff, the trial court should grant a motion to
> transfer.

*In re Nintendo*, 589 F.3d at 1198; *see also In re Hoffman-LaRoche*, 587 F.3d 1333, 1336 (Fed.

Cir. 2009) (granting mandamus and ordering transfer to North Carolina, noting that transfer is

appropriate where "there is a stark contrast in relevance, convenience, and fairness between the

two venues.").

Finally, in the *Zimmer* case from earlier this year, the Federal Circuit granted a

mandamus petition and ordered a transfer to Indiana even where Texas appeared to be the

plaintiff MedIdea's home forum.  In anticipation of filing suit against Zimmer (an Indiana

corporation), MedIdea "established" its principal place of business in Longview, Texas; no other

material witnesses or evidence was in Texas.  *See* 609 F.3d 1378, 1381.  When the inevitable

motion to transfer was filed, MedIdea challenged on the grounds it had sued in its home forum,

and the inconvenience to the party witnesses was counterbalanced  *See id*.  The district court

agreed, but the Federal Circuit concluded that this presented the "classic case where plaintiff is

attempting to game the system by artificially seeking to establish venue . . . ."  *Id.*

Thus, despite mandamus being an "extraordinary remedy" that is rarely appropriate, the

Federal Circuit has granted mandamus petitions and ordered venue transfers five times in the last

two years.  What *TS Tech* and its progeny unequivocally demonstrate is that district courts

should be vigilant to protect against plaintiffs "gam[ing] the system" by bringing suit in a

jurisdiction that they view as strategically desirable, but which has no real connection to the

actual dispute at issue.  That is precisely what we have here.

Because venue originally existed in the Northern District of California and it is much

more convenient than Virginia, this case should be transferred.

## I.      THE STANDARDS FOR TRANSFER ARE CLEARLY SATISFIED

### A.      Venue Would Be Proper In the Northern District of California

"Any civil action for patent infringement may be brought in the judicial district where the

defendant resides, or where the defendant has committed acts of infringement and has a regular

and established place of business." 28 U.S.C. § 1400(b).  For venue purposes, corporate

defendants reside in any district in which they are subject to personal jurisdiction.  *See* 28 U.S.C.

§ 1391(c).  Here, defendants Samsung Electronics America and Samsung Telecommunications

are both registered to do business in California and have offices in California, thus they "reside"

in California within the meaning of the statute.  Defendants Samsung Electronics and Samsung

Austin maintain regular business contacts in California and therefore also are subject to personal

jurisdiction in California.   Moreover, there is already a case pending in the Northern District of

California between Spansion and Samsung.  *See* Ex. 3.  Thus, because the defendants all are

subject to personal jurisdiction in the Northern District of California and are currently litigating there, venue certainly is proper.

**B.      Plaintiff's Forum Choice Is Entitled To Virtually No Weight**

A plaintiff's forum choice often may be accorded weight in the venue analysis, but there are well-settled exceptions to this practice.  Where the plaintiff elects to file its suit in a forum that is not its home forum or the home forum of the defendant, that choice receives closer scrutiny.  If, in addition, the cause of action asserted bears little relation to the chosen forum, the plaintiff's chosen forum deserves little weight.  *See, e.g., Koh v. Microtek Int'l, Inc.*, 250 F.Supp.2d 627, 635 (E.D. Va. 2003) ("[I]f there is little connection between the claims and this judicial district, that would militate against a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts."); *see also Lycos, Inc. v. Tivo, Inc.,* 499 F.Supp.2d 685, 692 (E.D. Va. 2007); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F.Supp.2d 517, 519 (E.D. Va. 1999) (plaintiff's choice to litigate in Virginia afforded minimal weight despite defendant conducting substantial retail business in Virginia and being registered to conduct business in Virginia).  This case presents a prime example of the type of forum shopping that section 1404(a) was meant to protect against.

Spansion is a Delaware corporation headquartered in California.  Complaint, ¶ 2.  Its "flagship" manufacturing facility is in Texas, and its Virginia authorized sales representative is actually in Maryland.  *See* Ex. 5 at 7.  Thus, far from being Spansion's home forum, Virginia is not even a locus of significant Spansion activity.

As described above, there also is no meaningful connection between this forum and the alleged cause of action.  The inventors on the patents-in-suit are not in Virginia.  None of the defendants have headquarters in Virginia and none of the defendants do any manufacturing in Virginia.  None of the documents or witnesses relevant to this case is in Virginia.  The ***only***

arguable activity that connects Virginia to this cause of action is the sales of accused products into the Commonwealth.  Standing alone, however, that does not favor maintaining venue in Virginia.  *See Agilent Technologies, Inc. v. Micromuse, Inc.*, 316 F.Supp.2d 322, 327 (E.D. Va. 2004) (quoting *Acterna v. Adtech*, 129 F.Supp.2d 936, 938 (E.D. Va. 2001) ("[F]ederal courts are not solicitous of plaintiffs claiming 'substantial weight' for their forum choice where the connection with the forum is limited to sales activity without more.").

Furthermore, because Samsung products are sold throughout the country, the "stream of commerce" theory would apply to ***every*** jurisdiction in this country.  But Samsung's sales in Virginia account for a relatively small portion of its total nationwide sales.  Here, "the percentage of [Samsung]'s sales of the accused product in Virginia is not significant enough to amount to a substantial connection with the Eastern District of Virginia." *Original Creatine Patent Co. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 569 (E.D. Va. 2005) (less than 4% sales in forum was not significant); *Acterna*, 129 F. Supp. 2d at 939 (finding 6.7% sales in forum was not significant).

The general rule in patent infringement cases is that "the preferred forum is that which is the center of the accused activity . . . which will most often be where the offending device is produced." *Id.*  "The trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Id.* (quoting *GTE Wireless*, 71 F.Supp. 2d at 519).  Because the accused products are designed and manufactured in South Korea, the closer venue to the "milieu of the infringing device" and the "hub of activity centered around its production" is the Northern District of California.  *Accord, In re Nintendo*, 589 F.3d at 1198 (Washington state more convenient than Texas where design and development of accused products occurred in Japan).

In summary, because the Eastern District of Virginia is not Spansion's home forum, and because there is no meaningful connection between Virginia and the claims at issue, Spansion's choice of forum is not entitled to substantial weight. This factor strongly favors transfer to the Northern District of California.

### C.   Witness Convenience and Access to Evidence Strongly Favors Transfer

In evaluating the convenience of the parties and witnesses, Virginia courts consider factors such as "ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process." *Lycos*, 499 F. Supp. 2d at 693. "[T]he preferred forum is the venue where the majority of the witnesses and the evidence is located." *Agilent*, 316 F. Supp. 2d at 327 n.3. *Cf., In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (granting petition for mandamus and ordering transfer from Texas to California: "Because a substantial number of materials witnesses reside within the transferee venue and the State of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer.").

The Northern District of California is home to Spansion's headquarters, and therefore will likely be where the majority of Spansion witnesses and evidence are located. As its website tells the world, the headquarters houses "one of [Spansion's] most critical groups in R&D." Ex. 5 at 3. Furthermore, the Northern District of California is home to all of the named inventors of the patents at issue. For these witnesses, California is clearly the most convenient forum since travel time and costs associated with travel would be minimal. In addition, the California Court will retain subpoena power over the inventors. This could be important to compel their participation or attendance, given that the '307 and '630 patents were filed over 10 years ago and were assigned to Spansion's predecessor in interest.

With respect to the defendants, because the design and production of the accused products, as well as related decision making, takes place in South Korea, many of defendant's key witnesses are located there.  For these witnesses, transfer of this action to California would enable them to take advantage of direct flights to United States without the need for connections and additional travel time and cost, which they would incur if they were required to travel to Virginia.  Given that California and Virginia are approximately 2700 miles apart, the time and cost differential of obtaining the attendance of witnesses in Virginia, as compared to California, would be significant.

Transfer of this action to the Northern District of California would also enhance the availability of compulsory process, given that the Court could compel the attendance of the California-based witnesses at trial. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii) (requiring subpoena to be quashed if witness forced to travel more than 100 miles from location of home or employment but imposing no such restriction when witness resides or works in state where trial occurs).  This factor weighs heavily in favor of transfer to the Northern District of California because most of the witnesses likely to provide relevant testimony are located in either California or South Korea.

That there may be witnesses and evidence in Texas or New Jersey, rather than California, does not undermine the convenience of California relative to Virginia.  What matters most here is that there clearly are no material witnesses or evidence *in this jurisdiction*, militating heavily in favor of transfer:

> While Plaintiff has offered evidence relevant the witnesses and evidence relevant to this case are dispersed throughout the world, Plaintiff has not offered proof that *any* relevant evidence or witness is located in Virginia.  Therefore, even assuming that this district is a 'substantial center' of Defendant's infringing sales and offers to sell, absent evidence that materials witnesses and evidence are in this district, the Court refuses to conclude that the Eastern District of Virginia is the preferred forum.

*Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 327 n.3 (E.D. Va. 2004) (original emphasis).  This case should go to California.

## II.     THE INTEREST OF JUSTICE DOES NOT WEIGH AGAINST TRANSFER

The last point to consider is the catch-all "interest of justice."  In determining whether a transfer is in the interest of justice, Virginia courts consider factors such as the pendency of a related action, the court's familiarity with the applicable law, docket congestion, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment.  *See Acterna*, 129 F. Supp. 2d at 939-940; *GTE Wireless*, 71 F. Supp. 2d at 519.

Most of these factors are either neutral or weigh slightly in favor of transfer.  *First*, there are currently three other pending actions involving the same parties—including one in the Northern District of California, so that weighs slightly in favor of transfer.[6]  *Second*, because this case arises under federal patent laws, this Court is no better or worse equipped to handle the subject matter than any other United States district court; therefore this factor is also neutral. *Third*, there do not appear to be any physical structures will need to be viewed in this case, but to the extent that there are, they clearly do not exist in Virginia.  *Fourth*, the possibility of unfair trial, the ability to join other parties and the possibility of harassment are not at issue here.

Given the lack of a nexus between Spansion and Virginia, it appears that Spansion's choice of forum was motivated by the expediency in which the courts of the Eastern District of Virginia are able to schedule trial dates and otherwise process cases.  However, "[t]his Court cannot stand as a willing repository for cases which have no real nexus to this district." *Agilent*,

---

[6] "For this District, docket conditions, although relevant, are a minor consideration when all other reasonable and logical factors would result in a transfer of venue." *Acterna*, 129 F.Supp.2d at 940 (quoting *GTE Wireless*, 71 F.Supp.2d at 520) (quotation marks omitted).  "If the rule were otherwise, every company with a national market and a patent infringement claim

316 F. Supp. 2d at 329.  "The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner." *Id.*  The court "cannot allow its ability to dispose of a matter quickly to outweigh other more significant reasons in favor of a transfer." *Original Creatine*, 387 F. Supp. 2d at 572.  Because here, all other factors favor a transfer to California, the interest of justice does not weigh against a transfer.

---

would be entitled to venue in this District." *Id.*  "The result would be untenable and thus this can never be the rule." *Id.*

## CONCLUSION

This case has no meaningful link to the Eastern District of Virginia, and the convenience of the parties and witnesses strongly favors transfer to the Northern District of California. Accordingly, Samsung respectfully request that the Court grant this motion.


Dated:  October 1, 2010                    Respectfully submitted,

                                            **FISH & RICHARDSON P.C.**

                                            By:   /s/  *Ahmed J. Davis*
                                            Michael J. McKeon (Va. Bar No. 44,341)
                                            mckeon@fr.com
                                            Joseph V. Colaianni (Va. Bar. No. 40,235)
                                            colaianni@fr.com
                                            Ahmed J. Davis (Va. Bar No. 43,972)
                                            davis@fr.com
                                            1425 K Street, NW
                                            11th Floor
                                            Washington, DC 20005
                                            Telephone: (202) 783-5070
                                            Facsimile: (202) 783-2331


                                            Karolina Jesien
                                            Jesien@fr.com
                                            601 Lexington Avenue, 52nd Floor
                                            New York,  NY 10022
                                            Telephone: (212) 765-5070
                                            Facsimile: (212) 258-2291


                                            *Counsel for Defendants Samsung Electronics Co.,*
                                            *Ltd., Samsung Electronics America, Inc., Samsung*
                                            *Telecommunications America, LLC, and Samsung*
                                            *Austin Semiconductor, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served October 1, 2010, via the Court's ECF system upon all counsel designated to receive such notices, as identified below:

Joel M. Freed                                    Attorneys for Plaintiff
Jennifer R. Belcher
McDermott Will & Emery LLP           SPANSION LLC
600 Thirteenth Street, NW
Washington, DC 20005-3096

_____/s/ *Ahmed J. Davis*_____